IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No.: 20-cr-28-RM-2

UNITED STATES OF AMERICA,

    Plaintiff,

v.

2.    KENIA VALLEJO-GALLO,

    Defendant.

## PLEA AGREEMENT

The United States of America, by and through Cyrus Y. Chung, Assistant United States Attorney, and the defendant, Kenia Vallejo-Gallo, personally and by counsel, Richard Banta, submit the following Plea Agreement pursuant to D.C.COLO.LCrR 11.1.

### I. AGREEMENT

**A.    Defendant's Plea of Guilty:**

The defendant agrees to: (1) plead guilty to Count Two of the First Superseding Indictment [ECF No. 72], charging a violation of 21 U.S.C. § 846, conspiracy to distribute and possess with intent to distribute controlled substances; (2) admit the forfeiture allegation contained in the First Superseding Indictment [ECF No. 72]; and, (3) waive certain appellate rights as described below.

**B.    Government's Obligations:**

In exchange for the defendant's plea of guilty, the United States agrees to: (1) recommend the Court give the defendant full credit for acceptance of responsibility per U.S. SENTENCING GUIDELINES MANUAL § 3E1.1, unless the defendant engages in

Court Exhibit 1

conduct that qualifies for the obstruction of justice enhancement under §§ 3C1.1 and 3E1.1, cmt. n.4, between the time of the guilty plea and sentencing; and (2) move to dismiss the remaining counts of the First Superseding Indictment (counts 23, 27, 31, 36, and 50) and the Indictment as to the defendant at the time of sentencing.

### C. Defendant's Waiver of Appeal

The defendant is aware that 18 U.S.C. § 3742 affords the right to appeal the sentence, including the manner in which that sentence is determined. Understanding this, and in exchange for the concessions made by the Government in this agreement, the defendant knowingly and voluntarily waives the right to appeal any matter in connection with this prosecution, conviction, or sentence unless it meets one of the following criteria: (1) the sentence exceeds the advisory guideline range that applies to a total offense level of 35; or (2) the Government appeals the sentence imposed. If any of these criteria apply, the defendant may appeal on any ground that is properly available in an appeal that follows a guilty plea.

The defendant also knowingly and voluntarily waives the right to challenge this prosecution, conviction, or sentence in any collateral attack (including, but not limited to, a motion brought under 28 U.S.C. § 2255). This waiver provision does not prevent the defendant from seeking relief otherwise available in a collateral attack on any of the following grounds: (1) the defendant should receive the benefit of an explicitly retroactive change in the sentencing guidelines or sentencing statute; (2) the defendant

was deprived of the effective assistance of counsel; or (3) the defendant was prejudiced by prosecutorial misconduct.

Should the plea of guilty be vacated on the motion of the defendant, the government may, in its sole discretion, move to reinstate any or all of the counts dismissed pursuant to this agreement.

### D.    Forfeiture of Assets

The defendant agrees to admit the forfeiture allegation in the First Superseding Indictment [ECF #72]. The defendant agrees to forfeit to the United States immediately and voluntarily any and all property, or portions thereof, subject to forfeiture, pursuant to 21 U.S.C. § 853, whether in the possession or control of the United States or in the possession or control of the defendant or defendant's nominees, or elsewhere. The assets to be forfeited specifically include, but are not limited to: $4,205 in United States currency. The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil, and/or administrative forfeiture action.

The defendant understands that pursuant to 18 U.S.C. § 983, the seizing agency is required to send notice in non-judicial civil forfeiture matters.  Having been advised of said rights regarding notice, the defendant hereby knowingly and voluntarily waives her rights to notice being sent within the time frames in 18 U.S.C. § 983 and to having the property returned to her if notice is not sent within the prescribed time frames.  The defendant waives all constitutional, legal and equitable claims arising out of and/or defenses to the forfeiture of this property in any proceeding, including any claim of

innocent ownership and any claim or defense under the Eighth Amendment, including any claim of excessive fine. The defendant agrees not to petition or assist anyone else in petitioning for the remission or mitigation of the forfeiture.

The defendant admits and agrees that the conduct described in the Stipulation of Facts below provides a sufficient factual and statutory basis to establish that the requisite nexus exists between the specific property subject to forfeiture and the offense to which defendant is pleading guilty. Pursuant to Fed. R. Crim. P. 32.2(b)(1), the United States and the defendant request that at the time of accepting this plea agreement, the Court find that the government has established the requisite nexus and enter a preliminary order of forfeiture.

The defendant agrees that the United States is not limited to forfeiture of the property described above. If the United States determines that property of the defendant identified for forfeiture cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty; then the United States shall be entitled to forfeiture of any other property (substitute assets) of the defendant up to the value of any property described above pursuant to 21 U.S.C. § 853(p) and Fed. R. Crim. P. 32.2(e). This Court shall retain jurisdiction to settle any disputes arising from application of this clause. The defendant agrees that forfeiture of

4

substitute assets as authorized herein shall not be deemed an alteration of the defendant's sentence.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty this Court may impose upon the defendant in addition to forfeiture.

In addition to forfeiture, the defendant further agrees to relinquish all claim, title and interest she has in the above-mentioned property from the defendant to the United States.

## II. ELEMENTS OF THE OFFENSE

The parties agree that the elements of the offense to which this plea is being tendered are as follows:

*First*: Two or more persons agreed to violate the federal drug laws;

*Second*: The defendant knew the essential objective of the conspiracy;

*Third*: The defendant knowingly and voluntarily involved herself in the conspiracy;

*Fourth:* There was interdependence among the members of the conspiracy; and

*Fifth:* The overall scope of the conspiracy involved at least 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine or at least 50 grams or more of methamphetamine (actual).[1]

---

[1] *10th Circuit Pattern Jury Instructions* § 2.87, Controlled Substances—Conspiracy (2018).

### III. STATUTORY PENALTIES

The statutory penalty for Count 2 is not less than 10 years, not more than life imprisonment; not more than a $10,000,000 fine, or both; not less than 5 years, not more than a lifetime of supervised release; and a $100 special assessment fee. If a term of probation or supervised release is imposed, any violation of the terms and/or conditions of supervision may result in an additional term of imprisonment.

### IV. COLLATERAL CONSEQUENCES

The conviction may cause the loss of civil rights, including but not limited to the rights to possess firearms, vote, hold elected office, and sit on a jury. If the defendant is an alien, the conviction may cause the defendant to be deported and removed from the United States or confined indefinitely if there is no country to which the defendant may be deported, to be denied admission to the United States in the future, and to be denied citizenship.

### V. STIPULATION OF FACTS

The parties agree that there is a factual basis for the guilty plea that the defendant will tender pursuant to this plea agreement. That basis is set forth below. Because the Court must, as part of its sentencing methodology, compute the advisory guideline range for the offense of conviction, consider relevant conduct, and consider the other factors set forth in 18 U.S.C. § 3553, additional facts may be included below which are pertinent to those considerations and computations. To the extent the parties

disagree about the facts set forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the execution of the plea agreement.

This stipulation of facts does not preclude either party from hereafter presenting the Court with additional facts which do not contradict facts to which the parties have stipulated and which are relevant to the Court's guideline computations, to other 18 U.S.C. § 3553 factors, or to the Court's overall sentencing decision.

The parties agree the facts are as follows:

From at least March 19, 2019 until February 12, 2020, Candelaria Vallejo-Gallo, based in Aurora and Denver, within the District of Colorado, organized the interstate transportation and local distribution of large quantities of illegal drugs. Candelaria Vallejo-Gallo worked with Mexico-based sources of supply to arrange pickups of illegal drugs from California-based intermediaries working with and for those Mexico-based sources of supply and, during the course of the FBI's investigation into her activities, arranged for the transport of large quantities of methamphetamine, heroin, cocaine, and fentanyl. To effectuate her scheme of drug distribution, Candelaria Vallejo-Gallo employed a network of co-conspirators, including interstate load runners, local runners, local multi-pound drug customers (who would, in turn, distribute to lower-level drug distributors), and lieutenants to coordinate the activities of the aforementioned co-conspirators.

The defendant was one of Candelaria Vallejo-Gallo's daughters and served as a lieutenant to her during the course of the conspiracy. On July 22, 2019, co-defendants

Michelle Josefina Castaneda and Beatriz Adriana Martinez-Meza were stopped in a Chevyv Cruze near Grand Junction, Colorado by the Colorado State Patrol, carrying a load of approximately 90 pounds of methamphetamine, 4.5 pounds of cocaine, 2.3 pounds of heroin, and 1.3 pounds of fentanyl. Some of those drugs were sent for testing from the DEA Western Laboratory. Approximately eight kilograms of the methamphetamine were tested, which revealed that it was 99% pure for a total of 7,965 grams of methamphetamine (actual). Further testing showed 1,951.2 grams of cocaine, 994.4 grams of heroin, and 530.3 grams of fentanyl pills. Following the stop, at approximately 9:23 am that day, the defendant spoke via cellular telephone with her mother and discussed a course of action following the arrests of Martinez-Meza and Castaneda. They discussed the fact that Martinez-Meza and Castaneda had been stopped, the use of canines in Utah law enforcement, and the defendant's efforts to locate records of the arrest. The defendant agreed to continue to look for court records indicating where the arrest had occurred.

On September 7, 2019, the defendant engaged in a conversation via cellular telephone with co-defendant Enrique Montoya-Arce, a Mexico-based intermediary between Candelaria Vallejo-Gallo's organization and Mexican sources of supply for drugs. They discussed the timing and the source of funds being directed to Mexico for drugs being provided to the Denver-based drug trafficking organization.

On October 13, 2019, the defendant engaged in another conversation via cellular telephone with Montoya-Arce. In this conversation, she discussed a meeting she had

with co-defendant Omar Rivas-Saenz the day before in which Rivas-Saenz entrusted his customer list to her and asked her to help collect money owed to him for drugs from those customers. She discussed the fact that her mother, Candelaria, had "cholos" that they could use in order to "bill" those customers and asked Montoya-Arce whether he would cross the border into the United States in order to aid her with distribution to and money collection from Rivas-Saenz's former customers.

On November 20, 2019, an FBI confidential human source called Candelaria Vallejo-Gallo to confirm a purchase of methamphetamine. The purchase occurred at a parking lot in Aurora. After the confidential source arrived there, the defendant arrived in a Range Rover and conversed with the source through each vehicle's respective open windows. Co-defendant Javier Alejandro Vallejo-Gallo then exited the Range Rover and got into the source's vehicle, where he placed a brown bag of methamphetamine on the floorboard behind the passenger seat. The source paid for the drugs with $2,200 of agency funds. The substance tested positive for methamphetamine with a weight of 445.7 g at 80% purity, for a total of 356.5 grams of methamphetamine.

On January 22, 2020, at approximately 2:45 PM, FBI Agents intercepted a call from Candelaria Vallejo-Gallo inquiring about an undelivered package in which she provided the tracking number and delivery address. Later that day, FBI agents and task force officers responded to leasing office for the address, which was in Denver, Colorado. After contacting office staff, they determined the next day that the package in

question was being held by the leasing office for the address because no apartment unit number was listed on the package and the name on the package, "Joseph Garcia," did not match a resident of the apartment complex. The defendant, who was a resident of the apartment complex, and co-defendant Eber Uriel Perez-Ramirez had attempted to pick up the package, but because the name on the package did not match their identities, management would not allow them to do so. After agents contacted management, a canine from the Denver Police Department (DPD) performed a dog sniff on the package in question, and the dog alerted on the package. The FBI seized and searched the package pursuant to a warrant and, once the package was open, four packages were discovered in a backpack. The packages were submitted to the DEA Western Laboratory for further testing, which revealed that they contained 8,897 grams of 65% pure methamphetamine, for a total of 5,783 grams of methamphetamine (actual).

On February 12, 2020, federal agents executed a search warrant at 9110 East Florida Avenue, Apartment 1-202. The defendant and another individual were present. The agents seized the $4,205 referenced in Section I.D above during the execution of the search warrant. The defendant agrees that the $4,205 is proceeds from the offense to which she is pleading guilty.

## VI.  ADVISORY GUIDELINE COMPUTATION AND 3553 ADVISEMENT

The parties understand that the imposition of a sentence in this matter is governed by 18 U.S.C. § 3553. In determining the particular sentence to be imposed,

the Court is required to consider seven factors. One of those factors is the sentencing range computed by the Court under advisory guidelines issued by the United States Sentencing Commission. In order to aid the Court in this regard, the parties set forth below their estimate of the advisory guideline range called for by the United States Sentencing Guidelines. To the extent that the parties disagree about the guideline computations, the recitation below identifies the matters which are in dispute.

The Guideline calculation below is the good-faith estimate of the parties, but it is only an estimate. The parties understand that the government has an independent obligation to assist the Court in making an accurate determination of the correct guideline range. To that end, the government may make legal or factual arguments that affect the estimate below.

A. **Base Offense Level**: The base offense level is **38** because the relevant conduct involved over 90,000 kilograms of converted drug weight. USSG § 2D1.1(a)(5).

B. **Specific Offense Characteristics**: No specific offense characteristics in § 2D1.1 apply.

C. **Adjustments**: No victim, role-related, or career offender adjustments apply.

D. **Acceptance of Responsibility**: The parties agree that the defendant should receive a **3-level** adjustment for acceptance of responsibility. USSG § 3E1.1(b).

E. **Adjusted Total Offense Level:** The parties agree that the defendant's adjusted total offense level is **35**.

F. **Criminal History Category:** The parties understand that the defendant's criminal history computation is tentative. The criminal history category is determined by the Court based on the defendant's prior convictions. Based on the information currently available to the parties, the government estimates that the defendant's criminal history category is I. USSG § 4B1.1(b).

G. **Imprisonment:** The advisory guideline range of imprisonment resulting from an offense level of **35** and a criminal history category of **I** is **168 to 210 months' imprisonment**. However, in order to be as accurate as possible, with the criminal history category undetermined at this time, the offense level estimated above could conceivably result in a range from 168 months (bottom of Category I) to 365 months (top of Category VI). In any event, the guideline range would not exceed the statutory maximum applicable to the count of conviction.

H. **Fine Range:** For an offense level of 35, the fine range would be $40,000 to $10,000,000. USSG § 5E1.2 and 21 U.S.C. § 841(b)(1)(A).

I. **Supervised Release:** If the Court imposes a term of supervised release, that term shall be at least five years. USSG § 5D1.2(c); 21 U.S.C. § 841(b)(1)(A).

12

  **J.**  **Restitution**: The parties agree that there is no restitution in this case.

  The parties understand that although the Court will consider the parties' estimate, the Court must make its own determination of the guideline range. In doing so, the Court is not bound by the position of any party.

  No estimate by the parties regarding the guideline range precludes either party from asking the Court, within the overall context of the guidelines, to depart from that range at sentencing if that party believes that a departure is specifically authorized by the guidelines or that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the United States Sentencing Commission in formulating the advisory guidelines. Similarly, no estimate by the parties regarding the guideline range precludes either party from asking the Court to vary entirely from the advisory guidelines and to impose a non-guideline sentence based on other 18 U.S.C. § 3553 factors.

  The parties understand that the Court is free, upon consideration and proper application of all 18 U.S.C. § 3553 factors, to impose that reasonable sentence which it deems appropriate in the exercise of its discretion and that such sentence may be less than that called for by the advisory guidelines (in length or form), within the advisory guideline range, or above the advisory guideline range up to and including imprisonment for the statutory maximum term, regardless of any computation or position of any party on any 18 U.S.C. § 3553 factor.

## VII.   ENTIRE AGREEMENT

This document states the parties' entire agreement. There are no other promises, agreements (or "side agreements"), terms, conditions, understandings, or assurances, express or implied. In entering this agreement, neither the Government nor the defendant has relied, or is relying, on any terms, promises, conditions, or assurances not expressly stated in this agreement.

Date: 02/05/21

_____
Kenia Vallejo-Gallo
Defendant

Date: 2/05/21

_____
Richard Banta
Attorney for Defendant

Date: 2/5/2021

_____
Cyrus Y. Chung
Attorney for the United States

14